## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division

| | |
|---|---|
| U.S. COMMODITY FUTURES<br>TRADING COMMISSION,<br><br>                    Plaintiff,<br><br>    v.<br><br>ALLIED MARKETS LLC,<br>JOSHUA GILLILAND, and<br>CHAWALIT WONGKHIAO,<br><br>                    Defendants. | Case No. |

## COMPLAINT FOR INJUNCTIVE RELIEF,
## CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF

Plaintiff United States Commodity Futures Trading Commission ("CFTC") alleges as follows:

### I.      SUMMARY

1.      Beginning as early as January 2012, Joshua Gilliland and Chawalit Wongkhiao, individually and as principals of Allied Markets LLC ("Allied Markets") (collectively "Defendants"), have engaged in a fraudulent scheme to solicit more than $1 million from members of the public to participate in a supposed commodity pool purportedly trading leveraged or margined retail off-exchange foreign currency contracts, commonly known as "forex."

2.      As part of this illegal scheme, Defendants misappropriated pool participants' funds to pay Gilliland's and Wongkhiao's personal expenses.  Gilliland and Wongkhiao

treated pool participants' funds as their personal bank account, spending pool participants' money on restaurants, entertainment, and living expenses.

3.      Defendants made material misrepresentations regarding their trading expertise and profits, and they failed to disclose to prospective and existing pool participants that only a small portion of their funds would be used to trade forex, while the rest would be misappropriated to pay Gilliland's and Wongkhiao's personal expenses and to further Defendants' fraudulent scheme.

4.      Defendants, who have never been registered as required with the CFTC, lured their victims into sending them funds for their purported commodity pool by fraudulently guaranteeing specific trading returns and by representing that Defendants' forex trading was generating large profits.  At Defendants' direction, pool participants deposited more than $1 million into bank accounts controlled by Defendants.  When Defendants paid what they claimed to be trading profits to pool participants or supposedly returned pool participants' principal, they did so using money paid by other pool participants, in the manner of a Ponzi scheme.

5.      By virtue of this conduct, and as more fully set forth below, Defendants have engaged, are engaging, and/or are about to engage in acts and practices in violation of Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A) and (C), 4k(2), 4m(1), and 4$o$(1) of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A), (C), 6k(2), 6m(1), 6$o$(1) (2012); and CFTC Regulations 3.12, 4.20(a)-(c), 4.41(a), 5.2(b)(1) and (3), 5.3(a)(2)(i), and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 4.20(a)-(c), 4.41(a), 5.2(b)(1), (3), 5.3(a)(2)(i), (ii) (2014).

## II.     JURISDICTION AND VENUE

6.     This Court possesses jurisdiction over this action pursuant to Section 6c(a) of the CEA, 7 U.S.C. § 13a-1 (2012), which authorizes the CFTC to seek injunctive and other relief against any person whenever it appears to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the CEA or any rule, regulation, or order thereunder.

7.     Venue properly lies in this District, pursuant to Section 6c(e) of the CEA, 7 U.S.C. § 13a-1(e) (2012), because Defendants are found in, inhabit, and transact business in the Middle District of Florida, and Defendants' acts and practices in violation of the CEA occurred, are occurring, or are about to occur in this District.

## III.     PARTIES

8.     Plaintiff **United States Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the CEA and the CFTC Regulations promulgated thereunder.  The CFTC maintains its principal office at 1155 21st Street NW, Washington, DC 20581.

9.     Defendant **Allied Markets LLC** is a Nevada limited liability company organized on February 2, 2012, with a principal business address of 3225 McLeod Drive, #100, Las Vegas, Nevada 89121.  Allied Markets' Nevada business license expired on February 27, 2013.  On December 11, 2012, Allied Markets registered as a foreign limited liability company with the Florida Department of State.  Allied Markets' last known business address is 1431 Riverplace Boulevard, Unit 3604, Jacksonville, Florida 32207.  Allied Markets has never been registered with the CFTC in any capacity.

3

10.     Defendant **Joshua Gilliland** is an individual residing in Jacksonville, Florida.  Gilliland is a managing member of Allied Markets.  Gilliland has never been registered with the CFTC in any capacity.

11.     Defendant **Chawalit Wongkhiao** is an individual residing in Jacksonville, Florida.  Wongkhiao is a managing member of Allied Markets.  Wongkhiao has never been registered with the CFTC in any capacity.

## IV.     RELEVANT STATUTES

12.     Section 1a(11) of the CEA, 7 U.S.C. § 1a(11) (2012), defines a commodity pool operator ("CPO"), in relevant part, as any person who, for compensation or profit, engages in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any commodity for future delivery, security futures product, swap, or forex agreement, contract, or transaction.

13.     Section 2(c)(2)(C) of the CEA, 7 U.S.C. § 2(c)(2)(C) (2012), applies provisions of the CEA to agreements, contracts, or transactions in forex.  Specifically, Section 2(c)(2)(C)(iv) of the CEA, 7 U.S.C. § 2(c)(2)(C)(iv) (2012), states that Section 4b of the CEA, 7 U.S.C. § 6b, applies to forex agreements, contracts, or transactions "as if" they were contracts of sale of a commodity for future delivery.  Section 2(c)(2)(C)(ii)(I) of the CEA, 7 U.S.C. § 2(c)(2)(C)(ii)(I) (2012), states that Sections 4b and 4*o* of the CEA, 7 U.S.C. §§ 6b, 6*o* (2012), apply to pooled investment vehicles that are offered for the purpose of

trading, or that trade, any forex agreement, contract, or transaction, and that involve persons or entities who are not "eligible contract participants," as that term is defined by Section 1a(18) of the Act, 7 U.S.C. § 1a(18) (2012).

14.     Section 4b(a)(2)(A) and (C) of the CEA, 7 U.S.C § 4b(a)(2)(A), (C) (2012), prohibits fraud in connection with any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market.

15.     Section 4*o*(1) of the CEA, 7 U.S.C. § 6*o*(1) (2012), prohibits fraud by any CPO, or an associated person of a CPO, by use of the mails or any means or instrumentality of interstate commerce.

16.     Section 4k(2) of the CEA, 7 U.S.C. § 6k(2) (2012), requires registration with the CFTC for any person associated with a CPO as a partner, officer, employee, consultant, or agent in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool.

17.     Section 4m(1) of the CEA, 7 U.S.C. § 6m(1) (2012), makes it unlawful for any CPO, unless registered with the CFTC, to make use of the mails or any means or instrumentality of interstate commerce in connection with the business of the CPO.

### V.     FACTS

18.     The Relevant Period for this Complaint is January 2012 through the present.

19.     During the Relevant Period, Allied Markets, by and through Gilliland and Wongkhiao, solicited members of the public, by use of the mails and/or other means or instrumentalities of interstate commerce, to send money to bank accounts under Defendants'

control for the purpose of trading agreements, contracts, or transactions in forex (foreign

currency, offered to persons who were not eligible contract participants, and offered, or

entered into, on a leveraged or margined basis) in a purported commodity pool operated by

Allied Markets.

20.     By undertaking these solicitations and accepting funds for a commodity pool,

Allied Markets, by and through Gilliland and Wongkhiao, acted as a CPO.

21.     Through their actions on behalf of Allied Markets, Gilliland and Wongkhiao

acted as associated persons of Allied Markets, the CPO.

22.     Neither Allied Markets, Gilliland, nor Wongkhiao has ever been registered

with the CFTC in any capacity.

23.     At least $1 million was deposited in accounts under Defendants' control for

the purpose of trading forex in a purported commodity pool operated by Allied Markets.

24.     During the Relevant Period, at least one pool participant did not qualify as an

"eligible contract participant," as that term is defined by Section 1a(18) of the Act, 7 U.S.C.

§ 1a(18) (2012).  In addition, the purported commodity pool operated by Allied Markets was

not an eligible contract participant during the Relevant Period.

25.     On numerous occasions during the Relevant Period, including in or about June

2012 and in or about July 2013, Defendants fraudulently represented to at least four

prospective pool participants that Allied Markets' forex trading offered a safe investment

with guaranteed returns, which pool participants were due to receive on a monthly or annual

basis.

26.     Defendants knew these representations were false because, among other things, Defendants knew that the purported commodity pool operated by Allied Markets, by and through Gilliland and Wongkhiao, sustained overall net losses in its forex trading account during the Relevant Period.

27.     Gilliland and Wongkhiao, acting on behalf of Allied Markets, directed at least two pool participants to sign agreements with Allied Markets containing fraudulent representations.  These agreements guaranteed rates of return on pool participants' principal of seven and ten percent, respectively.  The agreements also provided that pool participants could terminate their agreement with Allied Markets and that their principal would be refunded upon sixty days' notice.  Wongkhiao signed the agreements as a "Managing Member" of Allied Markets.

28.     While the agreements Allied Markets executed with pool participants referred to investment returns as "interest," Defendants communicated to pool participants that their funds were to be pooled for trading in forex and that returns would be derived from trading profits.  At least one agreement Allied Markets executed with a pool participant expressly stated that the pool would trade forex.

29.     During the Relevant Period, Defendants' representations prompted pool participants to provide Defendants at least $1 million for trading forex in the purported commodity pool operated by Allied Markets.  Defendants misappropriated this money.

30.     Defendants directed pool participants to send funds to bank accounts under their control.  In operating these bank accounts and accepting funds from pool participants, Defendants made no distinction between the purported commodity pool operated by Allied

7

Markets and Allied Markets as the CPO, and they commingled their personal funds with funds contributed by pool participants.

31.    Gilliland and Wongkhiao, acting on behalf of Allied Markets, established a forex trading account in the name of, and for the benefit of, Allied Markets, not for the purported commodity pool operated by Allied Markets.

32.    During the Relevant Period, the forex trading conducted by Gilliland and/or Wongkhiao resulted in a net loss of approximately $190,000.

33.    Defendants did not disclose these losses to pool participants.  Rather, Defendants knowingly misrepresented to pool participants on multiple occasions during the Relevant Period, in person and via telephone, that Defendants' forex trading was profitable.

34.    While Defendants initially deposited some of the funds they received from pool participants into the Allied Markets forex trading account, Defendants used only a small portion of those funds for trading.

35.    Instead of trading forex as promised, during the Relevant Period Defendants withdrew approximately $850,000 in pool participant funds from the Allied Markets forex trading account.

36.    Using pool participants' funds, Gilliland and Wongkhiao spent approximately $64,000 on restaurants and entertainment, approximately $33,000 on travel, hotels, and rental cars, and approximately $66,000 on rent for their residence in Jacksonville Beach, Florida.

37.    During the Relevant Period, Gilliland and Wongkhiao also transferred at least $83,200 to their personal bank accounts, withdrew approximately $105,000 in cash from automated teller machines, and withdrew approximately $34,000 in cash at bank branches.

38.     Defendants also used pool participant funds to pay purported profits, to pay other personal expenses, and to further their fraudulent scheme.  Defendants failed to disclose to pool participants that Defendants did not invest all pool participant funds as promised.

39.     During the Relevant Period, Defendants distributed approximately $48,169 in purported gains to pool participants.  Defendants represented that these payments came from trading profits.  Contrary to their representations, Defendants made these payments from the deposits of other pool participants, in the manner of a Ponzi scheme.

40.     Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices in violation of the CEA and CFTC Regulations.

## VI.     STATUTORY AND REGULATORY VIOLATIONS

### COUNT I

**FRAUD BY MISREPRESENTATION, OMISSION, AND MISAPPROPRIATION**
**Violations of 7 U.S.C. § 6b(a)(2)(A), (C) (2012) and 17 C.F.R. § 5.2(b) (2014)**

41.     The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

42.     Section 4b(a)(2)(A) and (C) of the CEA, 7 U.S.C § 4b(a)(2)(A), (C) (2012), makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market

(A)  to cheat or defraud or attempt to cheat or defraud the other person;

\*\*\*

(C)  willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or . . . with the other person[.]

43.     CFTC Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014), makes it unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:  (1) to cheat or defraud or attempt to cheat or defraud any person; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

44.     As described herein, Defendants violated Section 4b(a)(2)(A) and (C) of the CEA, 7 U.S.C. § 6b(a)(2)(A), (C) (2012), and CFTC Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2014), by their material false statements and omissions to prospective and existing pool participants regarding Defendants' trading and profitability, by misappropriating pool participants' funds, and by failing to disclose that misappropriation to pool participants.

45.     Defendants engaged in the acts and practices described above using instrumentalities of interstate commerce, including the use of interstate wires for transfer of funds.

46.     Defendants engaged in the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

47.     The foregoing acts and omissions by Gilliland and Wongkhiao occurred within the course and scope of their employment, office, and/or agency with Allied Markets.

Allied Markets is therefore liable for those acts and omissions, pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B) (2012), and CFTC Regulation 1.2, 17 C.F.R. § 1.2 (2014).

48.     During the Relevant Period, Gilliland and Wongkhiao controlled Allied Markets directly or indirectly, and they failed to act in good faith or knowingly induced, directly or indirectly, the acts constituting Allied Markets' violations of the CEA and CFTC Regulations. Gilliland and Wongkhiao are therefore liable for Allied Markets' violations of the CEA and CFTC Regulations, pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b) (2012).

49.     Each act of misrepresentation, material omission, or misappropriation including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(A) and (C) of the CEA, 7 U.S.C. § 6b(a)(2)(A), (C) (2012).

## COUNT II

### FRAUD BY A COMMODITY POOL OPERATOR
### Violations of 7 U.S.C. § 6*o*(1) (2012) and 17 C.F.R. § 4.41(a) (2014)

50.     The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

51.     Section 4*o*(1) of the CEA, 7 U.S.C. § 6*o*(1) (2012), makes it unlawful for a CPO, or an associated person of a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly

> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B)  to engage in any transaction, practice, or course of business
which operates as a fraud or deceit upon any client or participant or
prospective client or participant.

52.     CFTC Regulation 5.4, 17 C.F.R. § 5.4 (2014), states that Part 4 of the CFTC's

Regulations, 17 C.F.R. § 4.1 *et seq.* (2014), applies to any person required to register as a

CPO pursuant to Part 5 of the CFTC's Regulations relating to forex transactions, 17 C.F.R.

§ 5.1 *et seq.* (2014).

53.     As alleged herein, Allied Markets was required to register as a CPO during the

Relevant Period.

54.     CFTC Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2014), makes it unlawful for

any CPO, or any principal thereof, to publish, distribute, or broadcast, whether by electronic

media or otherwise, any report, letter, circular, memorandum, publication, writing,

advertisement, or other literature or advice that

(1)  Employs any device, scheme or artifice to defraud any
participant or client or prospective participant or client; [or]

(2)  Involves any transaction, practice or course of business which
operates as a fraud or deceit upon any participant or client or any
prospective participant or client[.]

55.     During the Relevant Period, Allied Markets acted as a CPO in that it engaged

in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar

form of enterprise, and, in connection therewith, solicited, accepted, or received funds,

securities, or property from others for the purpose of trading forex.

56.     During the Relevant Period, Gilliland and Wongkhiao were principals and/or

agents of Allied Markets, and acted as associated persons of Allied Markets, in that they

solicited and accepted funds, securities, or property for Allied Markets.

57.     During the Relevant Period, Allied Markets (acting as a CPO) and Gilliland and Wongkhiao (acting as associated persons of Allied Markets), through the use of the mails or other means or instrumentalities of interstate commerce (including through the use of telephone calls and electronic mail with prospective and existing pool participants), violated Section 4*o*(l) of the CEA, 7 U.S.C. § 6*o*(l) (2012), by:  (i) misappropriating pool participants' funds; and (ii) through their material false statements and omissions to prospective and existing pool participants about Allied Markets' forex trading and profitability.

58.     During the Relevant Period, Allied Markets (acting as a CPO) and Gilliland and Wongkhiao (acting as principals of Allied Markets) violated CFTC Regulation 4.41(a), 17 C.F.R. § 4.4l(a) (2014), by:  (i) misappropriating pool participants' funds; and (ii) through their material false statements and omissions to existing and prospective pool participants about Allied Markets' forex trading and profitability.

59.     Defendants engaged in the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

60.     The foregoing acts and omissions by Gilliland and Wongkhiao occurred within the course and scope of their employment, office, and/or agency with Allied Markets. Allied Markets is therefore liable for those acts and omissions, pursuant to Section 2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B) (2012), and CFTC Regulation 1.2, 17 C.F.R. § 1.2 (2014).

61.     During the Relevant Period, Gilliland and Wongkhiao controlled Allied Markets directly or indirectly, and they failed to act in good faith or knowingly induced, directly or indirectly, the acts constituting Allied Markets' violations of the CEA and CFTC Regulations.  Gilliland and Wongkhiao are therefore liable for Allied Markets' violations of

the CEA and CFTC Regulations, pursuant to Section 13(b) of the CEA, 7 U.S.C. § 13c(b)

(2012).

62.     Each act of misrepresentation, material omission, or misappropriation,

including, but not limited to, those specifically alleged herein, is alleged as a separate and

distinct violation of Section 4o(1) of the CEA, 7 U.S.C. § 6o(1) (2012).

## COUNT III

### FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR
### Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1) (2012) and
### 17 C.F.R. § 5.3(a)(2)(i) (2014)

63.     The allegations in the foregoing paragraphs are incorporated by reference as if

fully set forth herein.

64.     Section 4m(1) of the CEA, 7 U.S.C. § 6m(1) (2012), makes it unlawful for

any CPO, unless registered with the CFTC, to make use of the mails or any means or

instrumentality of interstate commerce in connection with its business as a CPO.

65.     Section 2(c)(2)(C)(iii)(I)(cc) of the CEA, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc)

(2012), makes it unlawful for any person, unless registered in such capacity as the CFTC

shall determine, to operate or solicit funds, securities, or property for any pooled investment

vehicle that is not an eligible contract participant in connection with agreements, contracts, or

transactions described in Section 2(c)(2)(C)(i) of the CEA, 7 U.S.C. § 2(c)(2)(C)(i) (2012)

(leveraged or margined forex transactions), entered into with or to be entered into with a

person who is not described in item (aa), (bb), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the

CEA, 7 U.S.C. § 2(c)(2)(B)(i)(II) (2012) (describing counterparties such as such as registered

futures commission merchants).

14

66.     CFTC Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014), requires any CPO, as defined by CFTC Regulations, to register with the CFTC.  CFTC Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2014), defines a CPO as any person who "operates or solicits funds, securities, or property for a pooled investment vehicle . . . that engages in retail forex transactions."

67.     During the Relevant Period, Allied Markets, by and through its employees, principals, agents, and/or controlling persons, including Gilliland and Wongkhiao, acted as a CPO because it operated or solicited funds, securities, or property for a pooled investment vehicle that was not an eligible contract participant and engaged in forex transactions.  Allied Markets, by and through Gilliland and Wongkhiao, acted as a CPO while failing to register with the CFTC as a CPO.

68.     During the Relevant Period, Allied Markets, by and through its employees, principals, agents, and/or controlling persons, including Gilliland and Wongkhiao, operated and solicited funds, securities, or property for a pooled investment vehicle that engaged in forex transactions, without having registered with the CFTC as a CPO, in violation of CFTC Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014).

## COUNT IV

### FAILURE TO REGISTER AS ASSOCIATED PERSONS
### Violations of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) (2012) and
### 17 C.F.R. §§ 3.12 and 5.3(a)(2)(ii) (2014)

69.     The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

70.     Section 4k(2) of the CEA, 7 U.S.C. § 6k(2) (2012), and CFTC Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2014), require registration with the CFTC for any person who is associated with a CPO as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves the solicitation of funds, securities, or property for participation in a commodity pool or the supervision of any person or persons so engaged.

71.     Section 4k(2) of the CEA, 7 U.S.C. § 6k(2) (2012), also makes it unlawful for any CPO to permit any person not registered with the CFTC as required to become or remain associated with the CPO in any capacity described in the preceding paragraph when the CPO knew or should have known that such person was not registered with the CFTC or that such registration had expired, been suspended (and the period of suspension has not expired), or been revoked.

72.     CFTC Regulation 3.12, 17 C.F.R. § 3.12 (2014), prohibits any person from being associated with a CPO as an associated person unless that person shall have registered with the CFTC as an associated person of that sponsoring CPO.

73.     Section 2(c)(2)(C)(iii)(I)(cc) of the CEA, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (2012), makes it unlawful for any person, unless registered in such capacity as the CFTC

16

shall determine, to operate or solicit funds, securities, or property for any pooled investment

vehicle that is not an eligible contract participant in connection with agreements, contracts, or

transactions described in Section 2(c)(2)(C)(i) of the CEA, 7 U.S.C. § 2(c)(2)(C)(i) (2012)

(leveraged or margined forex transactions), entered into with or to be entered into with a

person who is not described in item (aa), (bb), (ee), or (ff) of Section 2(c)(2)(B)(i)(II) of the

CEA, 7 U.S.C. § 2(c)(2)(B)(i)(II) (2012) (describing counterparties such as such as registered

futures commission merchants).CFTC Regulation 5.1(d)(2), 17 C.F.R. § 5.1(d)(2) (2014),

defines an associated person, for purposes of Part 5 of the CFTC's Regulations relating to

forex transactions, as any natural person associated with a CPO (as that term is defined in

CFTC Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2014)) as a partner, officer, employee,

consultant, or agent that is involved in the solicitation of funds, securities, or property, or the

supervision of any such person so engaged.

74.     During the Relevant Period, Gilliland and Wongkhiao, who have never been

registered with the CFTC in any capacity:  (i) solicited funds, securities, or property for

participation in a commodity pool operated by Allied Markets and/or supervised persons so

engaged; and (ii) operated or solicited funds, securities, or property for the Allied Markets

pooled investment vehicle, which was not an eligible contract participant, in connection with

off-exchange leveraged or margined forex contracts or transactions.  These actions violated

Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the CEA, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 4k(2)

(2012), and CFTC Regulations 3.12 and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 5.3(a)(2)(ii) (2014).

## COUNT V

**FAILURE TO OPERATE COMMODITY POOL AS A SEPARATE LEGAL ENTITY,
IMPROPER ACCEPTANCE OF FUNDS, AND COMMINGLING OF POOL FUNDS**
**Violations of 17 C.F.R. §4.20(a)-(c) (2014)**

75.     The allegations in the foregoing paragraphs are incorporated by reference as if fully set forth herein.

76.     CFTC Regulation 5.4, 17 C.F.R. § 5.4 (2014), states that Part 4 of the CFTC's Regulations, 17 C.F.R. § 4.1 *et seq.* (2014), applies to any person required to register as a CPO pursuant to Part 5 of the CFTC's Regulations relating to forex transactions, 17 C.F.R. § 5.1 *et seq.* (2014).

77.     CFTC Regulation 4.20(a), 17 C.F.R. § 4.20(a) (2014), requires a CPO to operate its commodity pool as a legal entity separate from that of the CPO.

78.     CFTC Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2014), requires that all funds, securities, or other property received by a CPO from a prospective or existing pool participant must be received in the commodity pool's name.

79.     CFTC Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2014), prohibits a CPO from commingling the property of any pool it operates with the property of any other person.

80.     During the Relevant Period, Allied Markets, acting through Gilliland and Wongkhiao and while acting as a CPO, violated CFTC Regulation 4.20(a)-(c), 17 C.F.R. § 4.20(a)-(c) (2014), by:  (i) failing to operate the commodity pool as a legal entity separate from Allied Markets, the CPO; (ii) receiving pool participant funds the name of Allied Markets, rather than in the name of the commodity pool; and (iii) commingling the property of the commodity pool with the funds of Allied Markets, Gilliland, and/or Wongkhiao.

## VII.   RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the CEA, 7 U.S.C. § 13a-1 (2012), and pursuant to the Court's inherent equitable powers, enter:

A.      An order finding that Defendants violated Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A) and (C), 4k(2), 4m, and 4*o*(1) of the CEA, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A), (C), 6k(2), 6m, 6*o*(1) (2012); and CFTC Regulations 3.12, 4.20(a)-(c), 4.41(a), 5.2(b)(1) and (3), 5.3(a)(2)(i), and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 4.20(a)-(c), 4.41(a), 5.2(b)(1), (3), 5.3(a)(2)(i), (ii) (2014);

B.      An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct that violates Sections 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A) and (C), 4k(2), 4m, and 4*o*(1) of the CEA, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A), (C), 6k(2), 6m, 6*o*(1) (2012); or CFTC Regulations 3.12, 4.20(a)-(c), 4.41(a), 5.2(b)(1) and (3), 5.3(a)(2)(i), and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 4.20(a)-(c), 4.41(a), 5.2(b)(1), (3), 5.3(a)(2)(i), (ii) (2014);

C.      An order of permanent injunction prohibiting Defendants, and any of their agents, servants, employees, successors, assigns, attorneys, and persons acting in active concert or participation with Defendants, including any successor thereof, from, directly or indirectly:

(1)      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the CEA, 7 U.S.C. § 1a(29) (2012));

(2)     Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in CFTC Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1)) ("commodity options"), security futures products, foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the CEA, 7 U.S.C. §§ 2(c)(2)(B), 2(c)(2)(C)(i) (2012)) ("forex"), and/or swaps (as that term is defined in Section 1a(47) of the CEA, 7 U.S.C. § 1a(47) (2012)) for any Defendant's personal or proprietary account or for any account in which any Defendant has a direct or indirect interest;

(3)     Having any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps traded on any Defendant's behalf;

(4)     Controlling or directing the trading for, or on behalf of, any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

(5)     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, forex contracts, and/or swaps;

(6)     Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such

20

registration or exemption from registration with the CFTC, except as provided

for in CFTC Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014);

(7)      Acting as a principal (as that term is defined in CFTC Regulation

3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of

any person or entity registered, exempted from registration or required to be

registered with the CFTC, except as provided for in CFTC Regulation

4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014);

(8)      Engaging in any business activity related to commodity futures,

options on commodity futures, commodity options, swaps, security futures

products, and/or forex contracts;

D.      An order directing Defendants, as well as any successors thereof, to disgorge,

pursuant to such procedure as the Court may order, all benefits received from the acts or

practices constituting violations of the CEA and CFTC Regulations, as described herein, and

pre- and post-judgment interest thereon from the date of such violations;

E.      An order directing Defendants, as well as any successors thereof, to make full

restitution, pursuant to such procedure as the Court may order, to every customer or pool

participant whose funds any Defendant received, or caused another person or entity to

receive, as a result of the acts and practices constituting violations of the CEA and CFTC

Regulations, as described herein, and pre- and post-judgment interest thereon from the date

of such violations;

F.      An order directing Defendants, as well as any successors thereof, to rescind,

pursuant to such procedures as the Court may order, all contracts and agreements, whether

implied or express, entered into between them and any customer or pool participant whose funds any Defendant received as a result of the acts and practices constituting violations of the CEA and CFTC Regulations, as described herein;

   G. An order directing Defendants, as well as any successors thereof, to pay a civil monetary penalty, plus post-judgment interest, for each violation of the CEA and CFTC Regulations described herein, in the amount of the greater of:  (i) $140,000 for each violation committed; or (ii) triple Defendants' monetary gain for each violation committed;

   H. An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412 (2012); and

   I. An order directing such further relief as the Court deems proper.


Dated:  January 5, 2015    Respectfully submitted,

By: _____

Jonathan P. Robell
DC Bar No. 493977
Email: jrobell@cftc.gov

Jonah E. McCarthy
DC Bar No. 492480
Email: jmccarthy@cftc.gov

Attorneys for Plaintiff
**U.S. COMMODITY FUTURES TRADING COMMISSION**
1155 21st Street NW
Washington, DC 20581
Tel:  (202) 418-5000
Fax:  (202) 418-5538