UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

U.S. COMMODITY FUTURES
TRADING COMMISSION,

              Plaintiff,

v.                                    CASE NO. 3:15-cv-5-J-34MCR

ALLIED MARKETS LLC,
JOSHUA GILLILAND, and
CHAWALIT WONGKHIAO,

              Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's Renewed Motion for Entry of

Default Judgment, Permanent Injunction, Civil Monetary Penalty, and Equitable

Relief Against Defendant Allied Markets LLC ("Motion") (Doc. 75).  For the

reasons stated herein, the undersigned **RECOMMENDS** that the Motion be

**GRANTED in part** and **DENIED in part**.

### I.    Background

On January 12, 2015, Plaintiff initiated this action for injunctive relief, civil

---

[1] "Within 14 days after being served with a copy of [this Report and
Recommendation], a party may serve and file specific written objections to the
proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may
respond to another party's objections within 14 days after being served with a copy."  *Id.*
A party's failure to serve and file specific objections to the proposed findings and
recommendations alters the scope of review by the District Judge and the United States
Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge
anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28
U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; M.D. Fla. R. 6.02.

monetary penalty, and other equitable relief against Allied Markets LLC ("Allied"),

Joshua Gilliland ("Gilliland"), and Chawalit Wongkhiao ("Wongkhiao"), for

violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1-27f (2012), and

its implementing regulations, 17 C.F.R. pts. 1-190. (Doc. 3.) The five-count

Complaint alleges fraud by misrepresentation, omission, and misappropriation in

violation of 7 U.S.C. §§ 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b); fraud by a

commodity pool operator ("CPO") in violation of 7 U.S.C. § 6*o*(1) and 17 C.F.R. §

4.41(a); failure to register as a CPO in violation of 7 U.S.C. §§

2(c)(2)(C)(iii)(I)(cc), 6m(1) and 17 C.F.R. § 5.3(a)(2)(i); failure to register as

associated persons in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) and 17

C.F.R. §§ 3.12 and 5.3(a)(2)(ii); and failure to operate a commodity pool as a

separate legal entity, improper acceptance of funds, and commingling of pool

funds in violation of 17 C.F.R. §§ 4.20(a)-(c). (*Id.*)

The Complaint alleges that as early as January 2012, Gilliland and

Wongkhiao, individually and as principals of Allied, engaged in a fraudulent

scheme to solicit more than $1 million from members of the public to participate in

a supposed commodity pool purportedly trading leveraged or margined retail off-

exchange foreign currency contracts, commonly known as "forex." (*Id.* at 1.) As

part of the scheme, Defendants allegedly misappropriated pool participants' funds

to pay the individual Defendants' personal expenses. (*Id.* at 1-2.) Defendants

allegedly misrepresented their trading expertise and profits, and failed to disclose

that only a small portion of the funds would be used to trade forex, while the rest would be misappropriated to pay their personal expenses and to further the fraudulent scheme.  (*Id.* at 2.)  Defendants, who have never been registered as required with the United States Commodity Futures Trading Commission ("CFTC"), allegedly lured their victims into sending funds by fraudulently guaranteeing specific trading returns and by representing that their forex trading was generating large profits.  (*Id.*)  Further, when Defendants paid what they claimed to be trading profits to pool participants, they did so using money paid by other pool participants, in the manner of a Ponzi scheme.  (*Id.*)

Each Defendant, through counsel, answered the Complaint on January 22 and 23, 2015, respectively.  (Docs. 19, 20, 21.)  On June 3, 2015, the Court allowed Defendants' counsel to withdraw from the case.  (Doc. 44.)  As of that date, the two individual Defendants were deemed to be proceeding *pro se*.  (*Id.* at 4.)  As to Allied, which was allegedly dissolved and insolvent, Plaintiff was directed to advise the Court how it intended to proceed by June 25, 2015, because it seemed that Allied would not be able to retain counsel.  (*Id.*)

On June 23, 2015, Plaintiff advised that Allied was not dissolved and that Plaintiff intended to continue litigating against it by potentially filing a motion for a default judgment.  (Doc. 46.)  Plaintiff explained:

> The Office of the Secretary of State of Nevada – where Defendants Gilliland and Wongkhiao formed Allied Markets – lists the company's status as "revoked."  *See* Ex. 1.  The revocation appears to be due to

3

> Allied Markets's failure to pay required licensing fees. *See* Ex. 2. Under Nevada law, revocation impacts a company's ability to conduct business, but not its capacity to sue and be sued. . . . Moreover, Nevada law requires a dissolving company to file articles of dissolution with the Secretary of State. . . . And the managers of a dissolved company maintain "full power to prosecute and defend suits, actions, proceedings and claims of any kind or character" to facilitate the winding up of the company's affairs.

(*Id.*)

On June 24, 2015, in light of Plaintiff's representations and Allied's failure to obtain new counsel despite being cautioned a number of times that it could appear and be heard only through counsel, the Court entered an Order directing Allied to show cause in writing, no later than July 15, 2015, why sanctions, including, but not limited to, striking its Answer and entering a default, should not be imposed for its failure to comply with the Court's Orders. (Doc. 47.) Allied did not respond to the Order to Show Cause, dated June 24, 2015, and did not obtain counsel as directed by the Court's Orders dated March 24, 2015 and April 27, 2015. (*See* Doc. 50 at 3.) Accordingly, on July 21, 2015, the Court entered an Order striking Allied's Answer and directing the Clerk of Court to enter a default against it for its failure to obtain counsel as directed by previous Court Orders and failure to show cause why sanctions should not be imposed therefor. (*Id.*) On July 22, 2015, the Clerk entered a default against Allied. (Doc. 51.)

On September 14, 2015, Plaintiff filed its first motion for entry of a default judgment, permanent injunction, civil monetary penalty, and equitable relief

against Allied.  (*See* Doc. 52.)  On October 2, 2015, Plaintiff also filed a motion

for summary judgment against Gilliland and Wongkhiao.  (*See* Doc. 53.)  On

October 14, 2015, the Court entered an Order denying without prejudice Plaintiff's

first motion for entry of a default judgment, permanent injunction, civil monetary

penalty, and equitable relief against Allied.  (*See* Doc. 55.)  The Court explained:

> Because Plaintiff's claims against the individual Defendants
> are still pending, the Court is precluded from entering a default
> judgment against Allied Markets LLC at this stage of the proceedings
> in light of the provisions of Rule 54(b) of the Federal Rules of Civil
> Procedure and the Supreme Court's decision in *Frow v. De La Vega*,
> 82 U.S. (15 Wall.) 552 (1872). . . . Because "*Frow* has been
> interpreted to apply only where there is a risk of inconsistent
> adjudications," *Drill South, Inc. v. Int'l Fidelity Ins. Co.*, 234 F.3d
> 1232, 1237 n.8 (11th Cir. 2000) (per curiam), and it appears there is
> such a risk in this case, the Motion is due to be denied without
> prejudice to refiling at a later time.

(*Id.* at 3-4, 5 (footnotes omitted).)

On March 4, 2019, the Court entered an Order granting in part and denying

in part Plaintiff's motion for summary judgment against Gilliland and Wongkhiao.

(Doc. 73.)  The Court found that the individual Defendants violated the anti-fraud

provisions and registration requirements of the CEA and its accompanying

regulations, and were liable as controlling persons for Allied's violations.  (*Id.*)

Thus, the Court granted summary judgment in favor of Plaintiff and against the

individual Defendants on Counts One, Two, Four, and Five of the Complaint.

(*Id.*)  The Court also granted Plaintiff's request for a permanent injunction, but

denied the request for restitution and a civil monetary penalty.  (*Id.*)  The Court

then stated:

> Remaining before the Court are CFTC's claims against Allied.  As
> noted above, CFTC obtained the entry of a default against Allied, but
> the Court denied without prejudice a motion for default judgment
> because the claims against the individual Defendants remained
> unresolved.  Thus, at this time, CFTC may file a renewed motion for
> default judgment.  Alternatively, if CFTC is satisfied that the
> judgment ordered to be entered here accomplishes its purposes, it
> may so advise the Court and dismiss its claims against Allied. . . .
>
> Plaintiff U.S. Commodity Futures Trading Commission is directed to
> advise the Court whether it intends to file a motion for default
> judgment against Defendant Allied Markets LLC or to dismiss that
> claim in light of the resolution of the claims against the individual
> Defendants.  Plaintiff shall file its notice by March 29, 2019.

(*Id.* at 24-25, 26 (emphasis omitted).)

On March 25, 2019, Plaintiff filed the present Motion, seeking a final default judgment on Counts One, Two, Three, and Five of the Complaint, a permanent injunction, restitution, and a civil monetary penalty against Allied.  (Doc. 75.)  The same day, the Motion was served on Defendants via electronic mail and US mail or UPS overnight delivery.  (*Id.* at 23.)  To date, Defendants have not responded to the Motion; thus, the Court will treat the Motion as unopposed.

## II.  Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  First, when a defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default against the defendant.  *See* Fed.R.Civ.P. 55(a).  Second, after receiving

the clerk's default, the plaintiff must apply to the court for a default judgment, except in limited circumstances when application may be made to the clerk.  *See* Fed.R.Civ.P. 55(b).  A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue."  *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134 (11th Cir. 1986).

All well-pleaded allegations of fact are deemed admitted upon entry of a default, but before entering a default judgment, the court must ensure that it has jurisdiction over the claims and that the complaint adequately states a claim for which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).  A sufficient basis must exist in the pleadings for the judgment entered.  *See Nishimatsu*, 515 F.2d at 1206.  A defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law."  *See id.*; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment").

Rule 8 provides that a complaint must include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and

(3) a demand for judgment for relief.  *See* Fed.R.Civ.P. 8(a).  A complaint meets the requirements of Rule 8, if in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Further, "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."  *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam).

> Subject matter jurisdiction in a federal court may be based upon federal question jurisdiction or diversity jurisdiction.  28 U.S.C. §§ 1331, 1332.  Diversity jurisdiction exists where the plaintiffs and defendants are citizens of different states, and the amount in controversy exceeds $75,000. . . .  Absent diversity of citizenship, a plaintiff must present a substantial federal question in order to invoke the district court's jurisdiction.

*Walker v. Sun Trust Bank of Thomasville, GA*, 363 F. App'x 11, 15 (11th Cir. Jan. 19, 2010) (per curiam) (internal quotation marks omitted).

Here, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.  (*See* Doc. 3 at ¶ 6 ("This Court possesses jurisdiction over this action pursuant to Section 6c(a) of the CEA, 7 U.S.C. § 13a-1 (2012), which authorizes the CFTC to seek

injunctive and other relief against any person whenever it appears to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the CEA or any rule, regulation, or order thereunder.").)  Venue is also proper in this District, pursuant to Section 6c(e) of the CEA, 7 U.S.C. § 13a-1(e), "because Defendants are found in, inhabit, and transact business in the Middle District of Florida, and Defendants' acts and practices in violation of the CEA occurred, are occurring, or are about to occur in this District."  (*Id.* at ¶ 7.)

The Court must also ensure that the defaulting Defendant was properly served.  "It is axiomatic that absent good service, the Court has no in personam or personal jurisdiction over a defendant."  *Tacoronte v. Tate & Kirlin Assocs.*, No. 6:13-cv-331-Orl-37DAB, 2013 WL 5970720, *4 (M.D. Fla. Nov. 8, 2013) (adopting Aug. 6, 2013 report and recommendation) (internal citations omitted).  "Without personal service of process in accordance with applicable law, a federal court is without jurisdiction to render a personal judgment against a defendant."  *Id.* (citing *Royal Lace Paper Works, Inc. v. Pest-Guard Prods., Inc.*, 240 F.2d 814, 816 (5th Cir. 1957)).

Here, the Complaint was served on Allied on January 7, 2015 and Allied answered it on January 23, 2015.  (*See* Docs. 11, 21.)  As such, the Court has personal jurisdiction over Allied.  Further, the Clerk's entry of default against Allied was proper.  (Doc. 51.)  On June 3, 2015, the Court allowed Defendants'

counsel to withdraw from the case (Doc. 44), and when Allied failed to obtain new counsel as directed by several Court Orders, on July 21, 2015, the Court entered an Order striking its Answer and directing the Clerk of Court to enter a default for its failure to obtain counsel and to show cause why sanctions should not be imposed therefor (Doc. 50). The Clerk entered a default on July 22, 2015. (Doc. 51.)

### III.   Discussion

Based on the well-pleaded allegations in the Complaint, which are taken as true, and the facts set forth in the Declarations of Patricia Gomersall and Dmitriy Vilenskiy, Plaintiff submits that the entry of a default judgment against Allied on Counts One, Two, Three, and Five of the Complaint is warranted. Upon review of the Complaint, the undersigned finds that a sufficient factual basis exists for a default judgment to be entered.

### A.   Liability

#### 1.   Count One

In Count One, Plaintiff alleges Defendants committed fraud by making material misrepresentations and omissions to prospective and existing pool participants regarding Defendants' trading and profitability, by misappropriating pool participants' funds, and by failing to disclose the misappropriation to pool participants, in violation of Section 4b of the CEA and Regulation 5.2 (Doc. 3 at ¶ 44). *See* 7 U.S.C. § 6b(a)(2)(A) & (C) (prohibiting "any person, in or in

10

connection with . . . any contract of sale of any commodity for future delivery[2] . . . that is made . . . with[] any other person," from "cheat[ing] or defraud[ing] or attempt[ing] to cheat or defraud the other person," or "willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract . . . or in regard to any act of agency performed"); 17 C.F.R. § 5.2(b)(1) & (3) (same, with respect to "retail forex transaction[s]").  Plaintiff alleges that Allied is liable as a principal for the acts and omissions of Wongkhiao and Gilliland, which occurred within the scope of their employment or office as managing members of Allied pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.  (Doc. 3 at ¶ 47.)

To establish fraud in violation of the CEA, Plaintiff must prove: (1) that Defendant made a misrepresentation, misleading statement, or deceptive omission; (2) with scienter; and (3) the misrepresentation, misleading statement, or omission was material.  *See CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002)[3]; *CFTC v. Premium Income Corp.*, No.

_____

[2] This Section applies with equal force to forex transactions.  *See* 7 U.S.C. §§ 2(c)(2)(C)(i)–(ii)(I) (stating that forex transactions with persons that are not eligible contract participants "shall be subject to . . . sections . . . 6b, . . . 6*o*, . . . and 13b of this title"); *see also* 7 U.S.C. § 1a(18) (defining "eligible contract participant").  As alleged in the Complaint, Allied's customers were not eligible contract participants.  (*See* Doc. 3 at ¶¶ 19, 24.)

[3] "Unlike a cause of action for fraud under the common law of Torts, 'reliance' on the representations is not a requisite element in an enforcement action."  *Fitzgerald*, 310 F.3d at 1328 n. 6 (citing *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 446 (D.N.J. 2000)).  Nevertheless, the Eleventh Circuit has not determined whether the Court must

(continued...)

3:05-CV-0416-B, 2007 WL 4563469, at *4 (N.D. Tex. Dec. 28, 2007).  "[S]cienter is established if Defendant intended to defraud, manipulate, deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care."  *Fitzgerald*, 310 F.3d at 1328 (citation omitted); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) ("A showing of severe recklessness satisfies the scienter requirement. . . . Severe recklessness is limited to those highly unreasonable omissions or misrepresentations . . . that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.") (quotations and citations omitted).  "A representation or omission is 'material' if a reasonable investor would consider it important in deciding whether to make an investment."  *Fitzgerald*, 310 F.3d at 1328–29.

Here, the Complaint alleges that Allied, by and through Wongkhiao and Gilliland, misrepresented to existing and prospective pool participants: (1) that forex trading was safe and consistently profitable; (2) that pool participants' funds would be used to trade forex; and (3) that pool participants would receive guaranteed returns from the purported pool.  (*See* Doc. 3 at ¶¶ 4, 25, 27-28, 33, 44.)  Also, Defendants told certain customers that the funds they were paid were profits from trading, when in reality, they came from new investments in the

---

[3](...continued)
find reliance to award restitution in enforcement proceedings.  *See CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1345 n.3 (11th Cir. 2008); *but see Fitzgerald*, 310 F.3d at 1343 n.5 (Wilson, J., dissenting).

manner of a Ponzi scheme.[4]  (*See id.* at ¶ 4.)

Further, Allied, by and through Wongkhiao and Gilliland, deceptively omitted: (1) that Defendants used only a small portion of pool participants' funds to trade forex; (2) that Defendants' forex trading resulted in net losses; (3) that payments characterized as trading profits and returns of principal, if any, to pool participants were being paid from funds contributed by other pool participants, in the manner of a Ponzi scheme; and (4) that Defendants were not registered with the CFTC.  (*See id.* at ¶¶ 3, 33-34, 38-39, 44.)  Defendants failed to inform their customers that the funds they invested were being used to pay Allied's business expenses and/or the individual Defendants' personal expenses.  (*Id.* at ¶ 38.)

Essentially, rather than use the funds for trading, Defendants misappropriated them.  (*See id.* at ¶¶ 2-3, 29, 44.)  Misappropriation of customer funds "constitutes willful and blatant fraudulent activity" that violates the anti-fraud provisions of the CEA.  *CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 687 (D. Md. 2000) (quotation omitted), *aff'd in part*, *vacated on other grounds in part, sub nom.*, *CFTC v. Baragosh*, 278 F.3d 319, 323 (4th Cir. 2002), *cert. denied*, 537 U.S. 950 (2002); *see also CFTC ex rel. Kelley v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985) (finding that "misappropriation of customers' funds which had been entrusted to [the defendant] for trading

---

[4] The Eleventh Circuit has explained that "[t]he essence of a Ponzi Scheme is to use newly invested money to pay off old investors and convince them that they are earning profits rather than losing their shirts."  *Perkins v. Haines*, 661 F.3d 623, 625 n.1 (11th Cir. 2011).

purposes is a violation of both §§ 4b(A) and 4o(1)").

Allied, by and through Wongkhiao and Gilliland, committed these misrepresentations, omissions, and misappropriations with scienter.  (*See* Doc. 3 at ¶ 46 ("Defendants engaged in the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.").)  For example, Defendants knew that they were not trading the majority of the funds invested with them, but rather they were using customer funds to pay for Allied's business expenses and the individual Defendants' personal expenses.  Defendants also knew that the purported commodity pool operated by Allied sustained overall net losses in its forex trading account during the relevant period.  (*Id.* at ¶ 26.)  Further, Defendants knew that none of them was registered with the CFTC; and yet, they failed to inform their customers of such facts.  (*Id.* at ¶¶ 9-11, 22, 67, 74.)

Finally, these misrepresentations and omissions are material, because a reasonable pool participant would want to know, among other things, that Defendants only used a small portion of pool participants' funds for trading forex and that the pool had sustained net losses during the time the funds were traded. *See CFTC v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985); *Rosenberg*, 85 F. Supp. 2d. at 447–48; *CFTC v. Driver*, 877 F. Supp. 2d 968, 978 (C.D. Cal. 2012); *see also Fitzgerald*, 310 F.3d at 1330; *Noble Wealth*, 90 F. Supp. 2d at 686 ("Indeed, misrepresentations concerning profit and risk go to the heart of a customer's investment decision and are therefore material as a matter of law.").

14

Additionally, misrepresentations and omissions regarding trading experience and registration status are material—"past success and experience are material factors which a reasonable investor would consider when deciding to invest in commodity options through that firm or broker. . . . Failure to inform customers of these material facts while projecting large profits amounts to fraud."  *CFTC v. Commonwealth Fin. Grp., Inc.*, 874 F. Supp. 1345, 1353–54 (S.D. Fla. 1994) (citations omitted).  Based on the foregoing, Plaintiff has stated a claim for fraud by misrepresentation, omission, and misappropriation, and a default judgment should be entered against Allied on Count One.

## 2.    Count Two

Plaintiff states that the same conduct that forms the basis of the Section 4b violations also violates Section 4*o* of the CEA and the corresponding regulation, because Allied was a CPO and the individual Defendants acted as associated persons of Allied.  *See* 7 U.S.C. § 6*o*(1)(A), (B) (prohibiting any CPO, or associated person of a CPO, "by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant"); 17 C.F.R. § 4.41(a) (prohibiting advertising that "[e]mploys any device, scheme, or artifice to defraud" or that "[i]nvolves any transaction, practice

or course of business which operates as a fraud or deceit" on any participant or prospective participant).

A CPO is any person "engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in" commodities, including forex.  *See* 7 U.S.C. §§ 1a(11)(A)(i)(I)–(II); 17 C.F.R. § 5.1(d)(1); *see also* 7 U.S.C. §§ 2(c)(2)(C)(i)(I)(aa)–(bb), 2(c)(2)(C)(iv).  An associated person is any natural person associated with a CPO "as a partner, officer, or employee . . . in any capacity which involves . . . [t]he solicitation or acceptance of retail forex customers' orders . . . or . . . [t]he supervision of any person or persons so engaged."  17 C.F.R. § 5.1(d)(2).

"The requirements for a fraud claim under § 4*o* are basically the same as for a fraud claim under § 4b [of the CEA].  The elements are derived from the common law action for fraud."  *First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1340 (6th Cir. 1987).[5]  The Court recognizes that 7 U.S.C. § 6*o*(1)(B) and 17 C.F.R. § 4.41(a)(2) do not require proof of scienter.  *Messer v. E.F. Hutton &*

---

[5] In *Weinberger*, where the plaintiff, an individual, was the victim of fraud, the Eighth Circuit stated that to prove fraud under the CEA, a defendant must intend to induce reliance and the victim must reasonably rely on the misrepresentation. *Weinberger*, 819 F.2d at 1340.  However, the Eleventh Circuit has unequivocally held that in enforcement actions, where CFTC is the plaintiff, reliance is not an element of fraud under the CEA.  *See Fitzgerald*, 310 F.3d at 1328 n.6 (citing *Rosenberg*, 85 F. Supp. 2d at 446); *see also JCC Inc. v. CFTC*, 63 F.3d 1557, 1565 n.23 (11th Cir. 1995).

*Co.*, 847 F.2d 673, 677 (11th Cir. 1988); *CTFC v. Heffernan*, 245 F. Supp. 2d 1276, 1291-92 (S.D. Ga. 2003).  However, as the Complaint adequately alleges that Defendants' numerous fraudulent misrepresentations, omissions, and misappropriations violated several subparts of Section 6 of the CEA and their corresponding regulations, with scienter (*see* Doc. 3, ¶¶ 57-59), the undersigned need not analyze Section 4*o* and its corresponding regulation separately.  *See, e.g.*, *Skorupskas*, 605 F. Supp. at 932–33 n.19 (collecting cases).  Allied's fraudulent conduct that forms the basis of the Section 4b violations also violates Section 4*o* of the CEA and the corresponding regulation (*see, e.g.*, Doc. 3 at ¶¶ 20-21, 53, 55-56).  *See Skorupskas*, 605 F. Supp. at 932; *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1108 (C.D. Cal. 2003); *Weinberger*, 819 F.2d at 1340.  As Plaintiff has stated a claim for fraud by a CPO, a default judgment should be entered against Allied on Count Two.

### 3.    Count Three

Section 4m(1) of the CEA, 7 U.S.C. § 6m(1), and the accompanying regulation make it unlawful for any CPO to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CPO, without registering with CFTC.  *See* 7 U.S.C. § 6m(1); 17 C.F.R. § 5.3(a)(2)(i); *see also* 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) (making it unlawful for a person not registered with the CFTC to "operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract

17

participant in connection with agreements, contracts, or transactions" described in 7 U.S.C. § 2(c)(2)(C)(i) of the CEA, entered into with or to be entered into with a person who is not described in item (aa), (bb), (ee), or (ff) of 7 U.S.C. § 2(c)(2)(B)(i)(II)).  A CPO is defined as "any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an eligible contract participant . . . and that engages in retail forex transactions."  17 C.F.R. § 5.1(d)(1).

Plaintiff alleges that Allied, without having registered with the CFTC, "acted as a CPO because it operated or solicited funds, securities, or property for a pooled investment vehicle that was not an eligible contract participant and engaged in forex transactions."  (Doc. 3 at ¶¶ 67-68.)  Because the Complaint adequately alleges that Allied failed to register as a CPO in violation of 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1)[6] and 17 C.F.R. § 5.3(a)(2)(i), a default judgment should be entered against it on Count Three.

### 4.    Count Five

In Count Five, Plaintiff alleges violations of 17 C.F.R. §§ 4.20(a)–(c).  17 C.F.R. § 4.20(a) states that "a commodity pool operator must operate its pool as an entity cognizable as a legal entity separate from that of the pool operator."  17 C.F.R. § 4.20(a).  17 C.F.R. § 4.20(b) states that "[a]ll funds . . . received by a

---

[6] There is no scienter requirement in § 6m(1).  *See CFTC v. Amerman*, 645 F. App'x 938, 944 (11th Cir. 2016) (per curiam).

commodity pool operator from an existing or prospective pool participant for the purchase of an interest or as an assessment . . . on an interest in a pool that it operates or that it intends to operate must be received in the pool's name."  17 C.F.R. § 4.20(b).  Finally, 17 C.F.R. § 4.20(c) states that "[n]o commodity pool operator may commingle the property of any pool that it operates or that it intends to operate with the property of any other person."  17 C.F.R. § 4.20(c).

The Complaint adequately alleges that Allied, while acting as a CPO, violated 17 C.F.R. §§ 4.20(a)–(c), by:

> (i) failing to operate the commodity pool as a legal entity separate from Allied Markets, the CPO; (ii) receiving pool participant funds [in] the name of Allied Markets, rather than in the name of the commodity pool; and (iii) commingling the property of the commodity pool with the funds of Allied Markets, Gilliland, and/or Wongkhiao.

(Doc. 3 at ¶ 80.)  Because the Complaint states a claim for violations of 17 C.F.R. §§ 4.20(a)–(c), a default judgment should be entered against Allied on Count Five.

## B.    Remedies

### 1.    Permanent Injunction

7 U.S.C. § 13a-1(b) states that "[u]pon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond."  7 U.S.C. §13a-1(b).  In determining whether to issue a permanent injunction, "the CFTC is not required to make a specific showing of irreparable injury or inadequacy of other remedies, which private litigants must make."  *CFTC v. Gutterman*, No.

12-21047-CIV, 2012 WL 2413082, at *7 (S.D. Fla. June 26, 2012) (citations omitted).  Rather, "the ultimate test is whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *Wilshire*, 531 F.3d at 1346 (quoting *SEC v. Caterinicchia*, 613 F.2d 102, 105 (5th Cir. 1980)[7]).  "Whether a likelihood of future violations exists depends on the totality of the circumstances.  A defendant's previous illegal conduct weighs heavily in this consideration."  *CFTC v. Altamont Glob. Partners, LLC*, No. 6:12-cv-1095-Orl-31TBS, 2014 WL 644693, *10 (M.D. Fla. Feb. 19, 2014) (internal citations omitted).  The Court may also consider "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations."  *Wilshire*, 531 F.3d at 1346 (quoting *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982)).

The Complaint alleges that Allied, by and through Wongkhiao and Gilliland, violated core anti-fraud provisions of the CEA, among other violations, with scienter—thus, its conduct was "not the result of mere negligence," and "[t]he state of mind necessary for these violations suggests that [Defendant] may

---

[7] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

commit future violations." *CFTC v. Heffernan*, 274 F. Supp. 2d 1375, 1380 (S.D. Ga. 2003) (citation omitted). Defendants misappropriated over one million dollars of investor funds (*see* Doc. 3 at ¶¶ 29, 57-58), a sum that certainly qualifies as egregious. *See Rosenberg*, 85 F. Supp. 2d at 454 (finding the misappropriation of "well over $200,000" and using it to pay personal expenses was an egregious violation). Defendants' violations were not isolated, but rather, took place over at least three years, during which they defrauded several individuals and likely would have continued to do so (Doc. 3 at ¶¶ 18, 40; Vilenskiy Decl. ¶¶ 6(e), (f), 16; Gomersall Decl. ¶ 10), if they had not been investigated by the CFTC and law enforcement. *See CFTC v. Hall*, 49 F. Supp. 3d 444, 453 (M.D. N.C. 2014) (finding that violations over a twelve-month period were "systematic" and not isolated).

Given violations of this nature, courts have issued permanent injunctions prohibiting defendants not only from committing future violations of the CEA, but also from trading on behalf of any other person or entity and participating in any commodity-related activity, including soliciting investors. *See Wilshire*, 531 F.3d at 1346 n.5; *Rosenberg*, 85 F. Supp. 2d at 454; *Noble Wealth*, 90 F. Supp. 2d at 692. Based on the foregoing, the undersigned recommends that a permanent injunction barring Allied from violating the CEA or participating in any trading or commodity-related activity is warranted.

## 2.    Restitution and Civil Monetary Penalty

The Court may impose on any person found to have committed any violation of the CEA equitable remedies, including "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)."  7 U.S.C. § 13a-1(d)(3).  In addition, the Court may impose a civil penalty in the amount of not more than the greater of $140,000 or triple the monetary gain to the person for each violation.  7 U.S.C. § 13a-1(d)(1)(A); 17 C.F.R. § 143.8.

In the Order granting summary judgment in favor of Plaintiff and against the individual Defendants, the Court declined to order restitution or impose a civil monetary penalty, because the individual Defendants had already been ordered to pay restitution and faced severe penalties in the criminal case against them. Plaintiff now seeks restitution and a civil monetary penalty against Allied, which was not named in the criminal case and is not yet subject to any order of restitution or penalty for its conduct.  (Doc. 75 at 18 n.3.)

Plaintiff argues that Allied should be ordered to pay restitution in the sum of $1,235,031.00,[8] plus post-judgment interest, which is the amount of loss sustained by two of its customers.  (*Id.* at 19.)  The undersigned recommends that Plaintiff's request for restitution as to Allied be granted.  *See CFTC v. King*,

_____

[8] The individual Defendants were ordered to pay this exact amount in restitution in the criminal case against them.  (*See* Docs. 85, 87 in Case No. 3:15-cr-35-J-34PDB.)

22

No. 3:06-cv-1583-M, 2007 WL 1321762, *3 (N.D. Tex. May 7, 2007). Allied should be held jointly and severally liable for the restitution previously awarded as to the individual Defendants, in the amount of $1,235,031.00, plus post-judgment interest at the rate prescribed by 28 U.S.C. § 1961.

Plaintiff also asks the Court to impose a civil monetary penalty against Allied in the amount of $3,705,093.00, which represents triple the amount of the monetary gain ($1,235,031.00) to Allied from the fraud. (Doc. 75 at 21.) In determining whether to award a civil penalty pursuant to the CEA, the Court considers the following factors: "the relationship of the violation at issue to the regulatory purposes of the Act and whether or not the violations involved core provisions of the Act; whether or not scienter was involved; the consequences flowing from the violative conduct; financial benefits to a defendant; and harm to customers or the market." *Gutterman*, 2012 WL 2413082, at *10 (citing *Noble Wealth*, 90 F. Supp. 2d at 694). "Civil monetary penalties 'should reflect the abstract or general seriousness of each violation and should be sufficiently high to deter future violations.'" *Id.* (quoting *In re Grossfeld* [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,921 at 44,467–68 (CFTC Dec. 10, 1996), *aff'd*, 137 F.3d 1300 (11th Cir. 1998)). The Court recognizes that "[t]o effect this exemplary purpose, that cost must not be too low or potential violators may be encouraged to engage in illegal conduct." *Id.* at 11 (quoting *In re GNP Commodities, Inc.* [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶

25,360 at 39,222 (CFTC Aug. 11, 1992), *aff'd sub nom. Monieson*, 996 F.2d at 852.

This is especially true where, as here, Defendant has committed fraud, a violation of a core provision of the CEA.  *See Gutterman*, 2012 WL 2413082, at *11; *Noble Wealth*, 90 F. Supp. 2d at 694; *Altamont Global*, 2014 WL 644693 at *11 (ordering, on default, a civil monetary penalty of $3,644,706, which represented three times the defendant's gain); *CFTC v. Int'l Fin. Servs. (NY), Inc.*, No. 02 Civ. 5497, 2003 WL 22350941, *2 (S.D.N.Y. June 24, 2003) (ordering, on default, a civil monetary penalty of $76,286,520, representing three times the defendant's gain for fraud violations).

Allied, through Gilliland and Wongkhiao, committed repeated violations of the core anti-fraud provisions of the CEA and corresponding regulations, resulting in more than $1.2 million in customer losses.  (Gomersall Decl. ¶ 18.) Defendants misappropriated the customers' money, spending more than $900,000 on personal expenses.  (Doc. 3 at ¶¶ 35-38; Vilenskiy Decl. ¶¶ 16-17; Gomersall Decl. ¶ 12.)  Of note, one of the victims, who contributed $1.15 million to the purported pool, considered Wongkhiao to be a part of her family; and another victim entrusted Allied with her mentally-ill father's life savings.  (Vilenskiy Decl. ¶¶ 27-28; Gomersall Decl. ¶¶ 14-16.)  In light of such intentional and egregious conduct, a civil monetary penalty against Allied seems appropriate.

However, "[a] district court is not obligated to impose the maximum

monetary penalty available under the [CEA]." *CFTC v. Capital Blu Mgmt., LLC*, No. 6:09-cv-508-Orl-28DAB, 2011 WL 2357629, *7 (M.D. Fla. June 9, 2011). Moreover, the Court is "cognizant of its duty to be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources." *Heffernan*, 274 F. Supp. 2d at 1378 (quoting *Rosenberg*, 85 F. Supp. 2d at 455); *see also CFTC v. Autry*, No. 6:10-cv-84, 2011 WL 6400352, at *7 (S.D. Ga. Dec. 19, 2011).

In light of the penalties against the individual Defendants, which were already quite severe, the Court declined to impose a civil monetary penalty against them, finding that the penalties imposed in the criminal case, along with the permanent injunction, were sufficient to deter future illegal conduct.  However, Allied is not a party to the criminal case and is not facing a forfeiture money judgment of $1,235,031 or a term of imprisonment.  Thus, a civil monetary penalty against Allied seems appropriate as it engaged in the same intentional and egregious conduct as the individual Defendants who exercise control over it.  However, given that those individuals are already subject to significant penalties and Allied is also subject to a broad permanent injunction and a restitution award, the civil monetary penalty against Allied should not exceed $1,235,031.  The undersigned believes that this penalty, although significantly smaller that the triple amount requested by Plaintiff, "would effectuate the deterrent and remedial goals of the CEA." *CFTC v. King*, No. 3:06-cv-1583-M, 2007 WL 1321762, *6 (N.D.

25

Tex. May 7, 2007).

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (**Doc. 75**) be **GRANTED in part** and **DENIED in part**.

2. Defendant, Allied Markets LLC, be permanently restrained, enjoined, and prohibited from directly or indirectly:

 a. Engaging in conduct that violates 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A), (C), 6k(2), 6m(1), and 6$o$(1), and 17 C.F.R. §§ 3.12, 4.20, 4.41, 5.2 and 5.3;

 b. Trading on or subject to the rules of any registered entity as that term is defined in 7 U.S.C. § 1a;

 c. Entering into any transactions involving commodity interests for its own personal account or for any account in which it has a direct or indirect interest;

 d. Having any commodity interests traded on its behalf;

 e. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

 f. Soliciting, receiving, or accepting any funds from any person for the purpose of commodity-related activity;

 g. Applying for registration or claiming exemption from

registration with CFTC in any capacity;

h.    Engaging in any act requiring registration with the CFTC (or an exemption from such registration);

i.    Acting as a principal, agent, officer, or any other employee of any person required to be registered with CFTC or expressly exempted from such registration pursuant to 17 C.F.R. § 4.14(a), except such persons provided for in 17 C.F.R. § 4.14(a)(9).

3.    The Clerk of Court be **DIRECTED** to enter a default judgment in favor of Plaintiff, U.S. Commodity Futures Trading Commission, and against Defendant, Allied Markets LLC, on Counts One, Two, Three, and Five of the Complaint, and Allied Markets LLC be ordered to pay restitution of $1,235,031.00 and a civil monetary penalty of $1,235,031.00, plus post-judgment interest at the rate prescribed by 28 U.S.C. § 1961.

**DONE AND ENTERED** at Jacksonville, Florida, on June 28, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Marcia Morales Howard
United States District Judge

Counsel of Record

Allied Markets, LLC
Care of: Joshua Gilliland
62207-018
Salvation Army, Chattanooga
822 McCallie Ave
Chattanooga, TN 37403
joshua1776@gmail.com

Joshua Gilliland
62207-018
Salvation Army, Chattanooga
822 McCallie Ave
Chattanooga, TN 37403
joshua1776@gmail.com

Chawalit Wongkhiao
62144-018
D. Ray James C.I.
P.O. Box 2000
Folkston, GA 31537
benjamin339024@gmail.com
ajhraha@gmail.com